640 So.2d 383 (1994)
Emma WILLIAMS, Plaintiff-Appellant,
v.
HOLLY HILL NURSING HOME, Defendant-Appellee.
No. 93-557.
Court of Appeal of Louisiana, Third Circuit.
March 30, 1994.
*384 Louis D. Bufkin, Lake Charles, for Emma Williams.
John E. Bergstedt, Lake Charles, for Holly Hill Nursing Home.
Before LABORDE, THIBODEAUX, DeCUIR, KNOLL and COOKS, JJ.
LABORDE, Judge.
This appeal arises from a workers compensation proceeding instituted by Emma Williams against her employer, Holly Hill Nursing Home, Inc. The sole issue on appeal is whether the hearing officer properly applied LSA-R.S. 23:1208.1 to bar Williams' benefits.
Being of the view that the provision precludes recovery of benefits to those failing to answer truthfully employer's questions directly related to a medical condition, not a body region, for which workers compensation benefits is sought, we reverse.

FACTS
On July 22, 1991, Emma Williams applied for employment with Holly Hill. As part of this application, Ms. Williams completed a standard pre-employment questionnaire concerning her physical condition and medical history. Among the questions on the questionnaire were the following:
A. Have you ever had problems with your back, neck, etc.?
B. Has a doctor ever restricted your activities?
C. Have you ever received treatment for your back, neck or knee from a doctor, chiropractor or therapist? and
D. Have you ever had an injury which required you to miss time from work?
The questionnaire explained that if the applicant answered yes to any of these questions, the applicant was to provide detailed information concerning her medical history. Additionally, pursuant to statute, the questionnaire contained a statement prominently displayed in bold faced block lettering, warning the applicant that a failure to answer truthfully could result in the denial of workers compensation benefits.
Ms. Williams answered "no" to these questions and was hired by Holly Hill as a nurse's assistant. She began work July 24, 1991. On that very same day, Ms. Williams injured her back while lifting a patient. From the date of her accident, Ms. Williams was treated conservatively by Dr. Charles Fellows, a family practitioner. Nonetheless, Ms. Williams worked steadily until August 21, 1991, before missing work between August 21 and 26, 1991, and again on September 2 and 3. With no recovery in sight, Dr. Fellows eventually took her off work indefinitely. Her compensation benefits began on September 4, 1991.
Additionally, Ms. Williams was seen by Dr. Bill Foster, a neurologist, on November 19, *385 1991. According to Dr. Foster's report, he had treated Ms. Williams previously for a back injury relating to a 1987 automobile accident, but that she had fully recovered and remained asymptomatic until her 1991 work-related injury. Dr. Foster diagnosed a severe lumbar strain and probable herniated disc, and related both to her 1991 work injury. He recommended further examinations to rule in or rule out his initial diagnosis.
Holly Hill terminated Ms. Williams' benefits on December 3, 1991, relying on the provisions of LSA-R.S. 23:1208.1. The reason for the termination was explained to Ms. Williams in a letter dated December 6, 1991, wherein it was explained to her that her benefits were being terminated for her failure to truthfully answer the pre-employment questionnaire.
After her benefits were terminated, Ms. Williams filed a claim form 1008 seeking reinstatement of benefits. Holly Hill denied Williams' petition based on her pre-employment application responses and LSA-R.S. 23:1208.1. Following argument and briefing by the parties, the hearing officer denied Ms. Williams' claims. This appeal followed.

LAW AND DISCUSSION
The governing statute reads as follows:
§ 1208.1. Employer's inquiry into employee's previous injury claims; forfeiture of benefits
Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold faced block lettering of no less than ten point type.
Added by Acts 1988, No. 938, § 2, eff. Jan. 1, 1989. Amended by Acts 1989, No. 454, § 5, eff. Jan. 1, 1990.
(Emphasis added).
The forfeiture of workers compensation benefits contemplated by LSA-R.S. 23:1208.1 is expressly conditioned upon the presence of three factors: an untruthful statement; a direct relationship between the answer elicited and the claim for benefits or ability to receive reimbursement from the second injury form; and compliance with the notice requirements of the statute. Want of any of the three factors is fatal to the employer's successful avoidance of workers compensation liability on grounds of past[1] artifice.
As might be surmised by the underscored language in LSA-R.S. 23:1208.1, the question we address is whether her "failure to [truthfully] answer directly relates to the medical condition for which a claim for benefits is made." It is undisputed that Williams failed to answer truthfully on her pre-employment questionnaire regarding her previous lumbar injury, missed work, and prior medical treatments. Additionally, plaintiff concedes that the employer complied with the notice requirements set forth above. Consequently, the question is whether plaintiff's failure to answer relates directly to the medical condition for which the present claim for benefits is made.
Answering affirmatively, the hearing officer (who admitted to never having read the reports of plaintiff's treating physician) concluded that plaintiff's failure to answer truthfully directly concerned her previous injury because both the earlier and later injuries relate to the same geographical region of her body. Concededly, this conclusion is consistent with what appears to be the only reported decision to date concerned with articulating what is meant by the operative language "directly related to" found in the statute, that of the First Circuit in Carter v. *386 Our Lady Regional Med. Center, 612 So.2d 805, 807 (La.App. 1st Cir.1992) ("The injuries in the 1989 and 1990 accidents were to the exact same areas.").
We differ with the legal interpretations of the hearing officer and the First Circuit, and reverse on that basis. In our opinion the express conditional language contained in LSA-R.S. 23:1208.1 serves to narrow the sweep of the forfeiture provision to require more than geographical identity. Had the law intended to bar relief for any misleading statements or based solely on the anatomical region affected, it could have done so. Instead, no doubt at the conclusion of a pitched battle, the law was compromised to permit employer questionnaires and workers compensation disqualifications, but only "provided [the employee's] failure to answer directly relates to the medical condition for which a claim for benefits is made...."
Although his initial impression could not be considered conclusive without additional testing (which defendant refused to provide), plaintiff's treating physician unequivocally stated that plaintiff's initial injury was probably unrelated to her second. Additionally, during the years between the time she recovered from the soft tissue injuries sustained in the 1987 automobile accident and the present work-related injury, plaintiff worked in positions entailing heavy use of the affected area.
Plaintiff's omissions, like the first injury, do not directly relate to the present injury, regardless of whether it is a soft tissue injury susceptible of recovery or one of a more permanent nature. The two injuries are not only not directly related to each other. They are not related to each other at all. They are different.[2]
Although the question is not before us today due to the date of plaintiff's application for employment, we further observe that the Americans with Disabilities Act, effective July 26, 1992 to employers of twenty-five or more workers and July 26, 1994 to those with fifteen or more workers, 42 U.S.C. § 12111, would appear to preempt LSA-R.S. 23:1208.1, as it would seem to prohibit inquiries as to an employee's or job applicant's disabilities.

Conclusion
Defendant's termination of benefits will not stand on grounds of LSA-R.S. 23:1208.1 alone. Therefore, the judgment of the hearing officer is reversed, at defendant's costs, and this matter is remanded for a hearing on the unresolved substantive issues previously held in abeyance.

REVERSED AND REMANDED.
KNOLL, J., dissents for the reasons assigned by DeCUIR, J.
DeCUIR, J., dissents and assigns written reasons.
DeCUIR, Judge, dissenting.
I respectfully dissent, believing that the majority is incorrect in three respects. Specifically, the majority opinion misconstrues the clear language of the statute, ignores the obvious intent of the legislature and inappropriately deviates from the manifest error standard of review.

Statute Misconstrued
The critical portion of La.R.S. 23:1208.1 provides that an employee's "failure to answer truthfully shall result in the employee's forfeiture of benefits." This language is qualified by the provision that "said failure to answer truthfully directly relates to the medical condition for which a claim for benefits is made."
*387 The majority incorrectly reads the statute to require that the claimant's previous injury must directly relate to the condition for which benefits are claimed. The statute requires that the failure to answer truthfully must directly relate to the condition for which benefits are claimed. The language of the statute is clear. The majority reading leads to absurd results. To satisfy the majority reading an employment questionnaire would have to require specific questions about each anatomically distinguishable portion of the human body. Furthermore, blatant lies such as those in this case regarding missed work or restricted activity would be sanctioned. Clearly the majority reading renders the statute meaningless in contravention of clear rules of statutory construction. Smith v. Town of Vinton, 25 So.2d 237 (La.1946); Weeden Engineering Corp. v. Hale, 435 So.2d 1158 (La.App. 3d Cir.1983).
In this case, it is undisputed that Williams had suffered a previous injury and disability and had been medically treated for a lumbar/lower back condition. It is also undisputed that Williams failed to answer truthfully on her pre-employment questionnaire regarding this condition, her disability and treatment. Williams' suggestion that she thought "back" referred only to her spine is unconvincing.
The language of La.R.S. 23:1208.1 is clear and unambiguous. Applying the generally prevailing meaning of the words, I would find that Williams' failure to answer truthfully regarding previous back injuries and missed work is "directly related" to the medical condition for which she is claiming benefits. Mrs. Williams was asked if she ever had problems with her back and was given an opportunity to disclose her specific previous problem. Rather than do so, Mrs. Williams chose to lie on the questionnaire despite the statutorily required warning that by so doing she risked losing workers' compensation benefits.
Furthermore, I note that Williams' previous injury was described as a lumbar straining injury. Her present injury is described as a lumbar strain with a probable herniated disc. Though I recognize that the present injury is more severe, I cannot see how, even with the strained interpretation adopted by the majority, a lumbar strain is unrelated to a lumbar strain. Common sense and the medical evidence suggests otherwise.
La.R.S. 23:1208.1 was enacted to insure that employers have accurate information regarding the risks they assume in hiring a particular employee or that untruthful employees assume the risk themselves. By refusing to answer truthfully regarding her back, Mrs. Williams placed herself squarely under the statute and forfeited her right to benefits. The majority opinion to the contrary misconstrues the statute and conflicts with existing jurisprudence. See Carter v. Our Lady of the Lake Regional Medical Center, 612 So.2d 805 (La.App. 1st Cir.1992).

Intent of the Legislature
As noted above, it is my view that the statute is clear and free from ambiguity and, therefore, the court should not disregard the letter in pursuit of its spirit. La.R.S. 1:4. Menard v. Royal Ins. Co., 498 So.2d 1164 (La.App. 3d Cir.1986). However, it is apparent that the majority either has interpreted the clear language to produce an absurd result or has found the language ambiguous and ignored the clear intent of the legislature. Either course is faulty.
It is well established that the object of a court in construing a statute is to ascertain the legislative intent and, where a literal interpretation would produce absurd consequences, the letter must give way to the spirit of the law and the statute must be construed so as to produce a reasonable result. Dore v. Tugwell, 228 La. 807, 84 So.2d 199 (1956); Succession of Payne v. Payne, 426 So.2d 1355 (La.App. 3d Cir.1983). Likewise, the interpretation of a statute should be consistent with its express terms and with the obvious intent of the legislature in enacting it. Cryer v. City of Alexandria through Alexandria Police Pension and Relief Bd., 425 So.2d 900 (La.App. 3d Cir.1983).
The only indication that the intent of the legislature was considered by the majority is an unsubstantiated suggestion that the amendment to La.R.S. 23:1208.1 was a compromise *388 achieved "no doubt at the conclusion of a pitched battle". A review of the legislative history suggests just the opposite.
The 1989 amendment to La.R.S. 23:1208.1 was part of a larger package of amendments designed to address a worker's compensation crisis that had forced Louisiana employers into assigned risk pools to obtain worker's compensation insurance. (Minutes of the House Committee on Labor and Industrial Relations, May 26, 1989; Minutes of the Senate Committee on Labor and Industrial Relations, Wednesday, June 7, 1989.) As in most years, the action of the legislature was aimed in part at preventing the judiciary from undermining established worker's compensation laws by unduly liberal interpretation. [Minutes of the House Committee on Labor and Industrial Relations, May 26, 1989; Johnston, Worker's Compensation, 50 La.L.Rev. 391 (1989).] Furthermore, the legislature adopted this amendment in spite of vociferous opposition correctly noting that the legislation, especially the forfeiture of benefits for lying on an application, involved no compromise. (Minutes of the House Committee on Labor and Industrial Relations, May 26, 1989; Minutes of Senate Committee on Labor and Industrial Relations, June 7, 1989.)
Clearly the legislature recognized the harsh nature of the remedies it chose to address the crisis in worker's compensation. The harshest remedies are aimed at liars and malingerers. This case is a perfect example of the problem that the legislature sought to address. By sanctioning employee untruths, the majority ignores the very foundation of our civilian tradition that "Law is a solemn expression of legislative will." Louisiana Civil Code Art. 1.

Deviation From Manifest Error Standard
It is well settled that a court of appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong". Rosell v. ESCO, 549 So.2d 840 (La.1989). When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell, supra.
In this case, the administrative law judge listened to Williams' testimony regarding the statements on her application and determined that they were in fact lies. Likewise, the administrative law judge reviewed the medical and lay testimony and factually determined that Williams' failures to answer truthfully directly related to the medical condition for which she claimed benefits. The record supports this finding. The majority deviates from the accepted standard of review in reversing the administrative law judge.
For the foregoing reasons, I respectfully dissent.
NOTES
[1] LSA-R.S. 23:1208 pertains to more contemporaneous deceit.
[2] We need not address whether LSA-R.S. 23:1208.1 is directed to prospective employees in addition to current employees. (The forfeiture statute, penal in nature, speaks only of employers and employees, not prospective employers and employees.) Ms. Williams reiterated the untruths in a recorded post-employment statement to her employer.

Nor need we consider whether the usual rule of liberal construction of workers compensation laws pertain to a case in which LSA-R.S. 23:1208.1 termination is at issue and the worker concedes to having responded untruthfully to a questionnaire.
Finally we, need not wonder whether plaintiff's false statement was made for the purpose of obtaining workers compensation benefits or to obtain a job. Compare, Lavergne v. Lake Charles Memorial Hosp., 625 So.2d 1098, 1101 (La.App. 3d Cir.1993).