661 So.2d 562 (1995)
Mitchell K. WILLIAMS, Plaintiff-2nd Appellant,
v.
FIBREBOND CORPORATION, Defendant-1st Appellant.
Nos. 27401-CA, 27402-CA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1995.
*563 Michael Latimer, Minden, for appellant.
Michael Poe, Shreveport, for appellee.
Before MARVIN, SEXTON and BROWN, JJ.
BROWN, Judge.
Plaintiff, Mitchell Williams, appeals the ruling which denied his claim for workers' compensation benefits. Plaintiff's employer, Fibrebond Corporation ("Fibrebond"), appeals that portion of the ruling which ordered it to pay certain medical expenses, penalties, and attorney fees. We affirm in part, amend in part and reverse in part.

*564 FACTS
Mitchell Williams worked for Fibrebond for fourteen days during the month of February, 1991. Fibrebond produces composite building materials, incorporating concrete and fiberglass to make panels used in construction. Williams worked on an assembly line where he leveled and flattened a concrete mixture applied to the building panels. This process was accomplished manually by using a two-by-four board. According to Williams, he was pushing and pulling the board when he felt a tightening in his chest and a pulling sensation throughout the upper part of his body. When the discomfort subsided during a short rest period, Williams went back to work. The pain continued, subsiding during breaks and resuming as plaintiff worked. This cycle continued over a period of days.
On February 20, 1991, Williams was again leveling the concrete mixture when he became dizzy, short of breath, and experienced severe chest pains. This time, plaintiff lost consciousness. He was rushed to a nearby hospital where a heart attack was originally suspected. When a series of tests revealed no particular injury, plaintiff was released and was told he could return to work the next day. Following his release from the hospital, however, Williams placed himself under the care of a chiropractor, Dr. James A. Wiseman, who diagnosed cervical and thoracic strain/sprain, myalgia myositis, fibrositis, and loss of the normal cervical curve. On the advice of his attorney and Dr. Wiseman, plaintiff saw Dr. A.J. Tillinghast about a possible pulmonary dysfunction related to an alleged February 17th incident where plaintiff was sprayed with chemicals while at work. The pulmonary specialist concluded that plaintiff did have a mild restrictive pulmonary defect. The cause of this defect, however, could not be determined without invasive surgical procedures which plaintiff, upon the advice of his attorney, opted to forego.
Williams filed for workers' compensation benefits claiming injuries to his upper back and lower neck as a result of using the two-by-four in the performance of his job. In answer to the claim, Fibrebond argued that Williams had given erroneous and misleading answers on a medical history checklist completed shortly after he began work, but prior to the date of the alleged injuries. In completing the checklist, Williams indicated that he had never had a spinal fusion or surgical removal of an intervertebral disc, any ruptured discs, or any neck or back injuries; however, during discovery, Williams admitted to a long history of employment related injuries and stated that he had undergone surgeries resulting in a cervical fusion and the removal of six ruptured discs due to neck and back injuries sustained during previous employment. Fibrebond asserted that the provisions of LSA-R.S. 23:1208.1 established a bar to recovery where a worker neglected to inform his employer of all previous injuries.
The hearing officer found LSA-R.S. 23:1208.1 to be operable and denied plaintiff's claim for workers' compensation. The hearing officer, however, ordered Fibrebond to pay certain medical expenses, including those for testing related to plaintiff's alleged pulmonary disorder. Because Fibrebond had previously refused to pay these expenses, the hearing officer also assessed penalties and attorney fees. Both parties appeal.

DISCUSSION

Plaintiff's Claim for Neck and Back Injuries
LSA-R.S. 23:1208.1 provides the following:
Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture *565 of workers' compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold faced black lettering of no less than ten point type.
The forfeiture of workers' compensation benefits contemplated by LSA-R.S. 23:1208.1 is thus conditioned upon the presence of three factors: an untruthful statement; a direct relationship between the answer elicited and the claim for benefits or ability to receive reimbursement from the second injury fund; and compliance with the statutory notice requirements. Want of any of these is fatal to the employer's successful use of the forfeiture provision. Williams v. Holly Hill Nursing Home, 93-557 (La.App. 3rd Cir. 03/30/94), 640 So.2d 383, writ denied, 94-1134 (La. 07/01/94), 641 So.2d 208.
Plaintiff completed and signed a medical history checklist on February 14, 1991. The form includes a listing of various medical conditions and asks the applicant to indicate whether he previously or currently suffered from any such ailments. Listed among the medical conditions were "spinal fusion or surgical removal of an intervertebral disc" and "ruptured intervertebral disc." The form as completed indicates that plaintiff denied the existence of these conditions. The only prior injury to which plaintiff alluded was an arcane reference to being shot in his right knee during the Vietnam war.
During a deposition, however, plaintiff revealed a lengthy history of work-related injuries. In May 1980, plaintiff sustained a neck injury that required the removal of two ruptured discs and a cervical fusion at the C3-4 level. In January 1986, plaintiff sustained a broken foot and ankle and ruptured four discs in his lower back after being struck by a forklift. This injury resulted in a fusion in plaintiff's lower back. When plaintiff subsequently returned to work some six months later, he slipped, fell, and reinjured his lower back. As a result, the prior lower back fusion surgery had to be repeated. In 1990, plaintiff slipped and fell from a tank truck and injured the tendons in his hand and wrist. None of these injuries were listed or described in plaintiff's responses to the medical history checklist. Furthermore, the sole condition listed on the form, a knee injury, was not a war injury as indicated, but occurred instead when plaintiff fell and struck his knee on a rock during training exercises in Hawaii. Plaintiff did not serve in Vietnam and left the Army under a general discharge.
Plaintiff's medical history form clearly contains misstatements and untruthful answers. Plaintiff attempted to prove that he was instructed by Fibrebond supervisors not to list the previous cervical injuries. In support, plaintiff offered the testimony of his step-father and his cousin's husband. Both men were former employees of Fibrebond who testified that a supervisor told them to omit information about prior injuries when completing their medical histories. Plaintiff himself stated that he was told not to complete the questions related to cervical disorders and that the negative responses found on the finished form were supplied by someone else. Plaintiff went on to testify that he made Fibrebond aware of his previous injuries through conversations with his superiors and personnel department employees. Plaintiff stated that he also worked frequently without a shirt and that his supervisor had asked him about the origin of various surgery scars. Finally, plaintiff stated that he recounted his prior injuries to Dr. John Fleming, Fibrebond's company doctor, during a pre-employment physical examination.
By contrast, two Fibrebond supervisors and an administrative assistant testified that they never instructed employees to omit or misstate information on medical history forms. While not certain about the date the form was completed, Supervisor Willie Stanley testified that he saw plaintiff complete the entire questionnaire. None of the testifying Fibrebond employees could recall plaintiff ever describing his previous neck or back injuries. Ivory Lewis stated that Fibrebond had a dress-code that prohibited the removal of shirts and noted further that the workplace was too cool in February to work shirtless. Debra Acklen, administrative assistant to the Fibrebond plant manager, testified that Dr. Fleming administered drug tests only and did not conduct pre-employment physical examinations.
While the testimony is conflicting, the hearing officer's exercise of discretion in assessing *566 witness credibility is beyond the scope of our examination. The testimony presented is sufficient to support the conclusion that plaintiff completed the medical history form and failed to answer truthfully concerning his prior injuries.
The medical history form concludes with a warning clearly stating that the failure to answer truthfully could result in the forfeiture of compensation benefits. The notice is prominently displayed in bold type and is followed by an attestation by plaintiff that he read and fully understood the notice. Plaintiff's signature and the date follow thereafter.
We are left to consider whether the failure to answer truthfully directly relates to the medical condition for which plaintiff's claim for benefits is made. In lending meaning to this inquiry, we must reflect upon various policy considerations. In essence, this inquiry considers the prejudicial effect created by an employee's artifice concerning prior injuries. The purposeful omission or mischaracterization of previous injuries and medical conditions prevents an employer from identifying the ideal job placement for applicants. Indeed, on the basis of misinformation, an applicant may be hired for a job whose physical demands pose a threat to the health and safety of the applicant and other employees. The burgeoning costs of workers' compensation claims provide an economic incentive for the harsh penalty found in LSA-R.S. 23:1208.1.
And yet, we must balance the employer's desire to avoid nonproduction costs against the employee's need to exchange for the practical necessities of life the only commodities he has to offer in a competitive job market, his time and labor. Pickett v. Stine Lumber Co., 93-1534 (La.App. 3rd Cir. 06/01/94) 640 So.2d 769. We must also give consideration to the jurisprudentially recognized liberality of Louisiana workers' compensation law. Peveto v. WHC Contractors, et al., 93-C-1402 (La. 01/14/94) 630 So.2d 689.
Plaintiff argues that his new injuries are not identical to his prior injuries, and therefore, his untruthful answers are of no consequence. This narrow approach to identifying a "direct relationship" overlooks the cumulative effect resulting when the prior injury contributes to or makes more probable a subsequent injury that may not be identical to a prior injury. We conclude that "directly related" should refer to a previous condition that made the injury for which the present claim is filed inevitable or very likely to occur. In other words, given the pre-job medical condition of the employee, a recurrence of that condition or some other type of injury was bound to happen while the employee was performing his regular job duties. Cudd v. George Koch & Sons, 94-372 (La. App. 3rd Cir. 11/02/94) 649 So.2d 505, writ denied, 94-2920 (La. 02/09/95), 650 So.2d 244.
The most thorough analyses of plaintiff's injuries were performed by the chiropractor, Dr. Wiseman, and by Dr. Don Joffrion, an orthopedic surgeon, who examined plaintiff at the request of both parties. While Dr. Wiseman expressed his opinion that plaintiff's current injuries were unrelated to prior injuries, he also opined that there could be some correlation. During a deposition, Dr. Wiseman stated "I don't believe that the cervical fusion at the C3 and 4 level above that, that he had prior, is a totally separate injury from the problems that he is having, suffering from now." In a July 28, 1992 report, Dr. Wiseman drew the following conclusion:
As you know, his past history includes a fusion of the 3rd and 4th cervical vertebra and with this type of history, his neck would be very susceptible to further damage. It is not out of the question that this condition is a severe aggravation of the preexisting problem. However, the nerve root symptoms he is suffering from now seem to indicate a nerve root possibly one or two levels below his fusion.
Dr. Joffrion's examination produced no objective findings concerning any new injury to explain plaintiff's complaints. In fact, Dr. Joffrion stated that plaintiff's complaints were consistent with his previous problems at the C3-4 level of his neck. Dr. Joffrion also indicated that plaintiff's prior back injuries were severe enough to place limitations on his ability to work. The implication is obvious: the condition of plaintiff's back was *567 such that further injury was probable barring work restrictions.
Lastly, we note that plaintiff's job required him to use a two-by-four board in a vigorous and repetitive manner which required the exercise of his upper body strength. The physical requirements of the job thus required plaintiff to use previously injured areas of his body.
There is sufficient evidence to find that plaintiff's current problems could be an exacerbation of his previous injuries or that the physical limitations imposed by the earlier injuries, combined with the physical requirements of his job, contributed to plaintiff's subsequent condition. This evidence supports the conclusion that plaintiff's failure to answer truthfully concerning his prior injuries is directly related to his current claims. Finding this relationship, we need not consider the success of any claim made to the second injury fund.
The evidence supports a finding that plaintiff was not truthful in completing the medical history questionnaire prior to his present injury. The questionnaire clearly spelled out the consequences for failing to answer truthfully. We find a direct relationship between plaintiff's untruthful responses to the questionnaire and his current injuries. The forfeiture of plaintiff's workers' compensation claim under LSA-R.S. 23:1208.1 is therefore affirmed.

Medical Expenses
Fibrebond also appeals the hearing officer's ruling ordering it to pay medical bills related to the examination performed Dr. Tillinghast, the ambulance bill for plaintiff's February 20, 1991 trip to the emergency room, and a bill from the Minden Medical Center. LSA-R.S. 23:1203 requires employers to furnish all necessary medical and non-medical treatment for an employee injured in a work related accident. Initially, plaintiff has the burden of establishing a work-related injury by a preponderance of the evidence. Shelton v. Wall, 614 So.2d 828 (La.App.2d Cir.1993). Whether he met this burden depends on the totality of the evidence, including lay and medical testimony. DeFatta v. General Motors Corp., 605 So.2d 616 (La. App.2d Cir.1992).
Plaintiff testified that on February 17, 1991, he was sprayed with chemicals while engaged in the performance of his duties. He also stated that he notified two supervisors, Ivory Lewis and Willie Stanley, about the incident. The record contains no evidence contrary to plaintiff's claim regarding the February 17th accident. To prevail against Fibrebond, however, plaintiff needed to prove that this accident resulted in a work-related injury.
On the advice of his chiropractor and attorney, plaintiff visited Dr. A.J. Tillinghast who performed a series of tests searching for the cause of plaintiff's shortness of breath. Dr. Tillinghast, who saw plaintiff some three months after the accident, reported his findings in a series of letters. Dr. Tillinghast reported that plaintiff had a mild restrictive pulmonary defect stemming from an obstruction of small airways. The doctor related that plaintiff probably had some acute bronchitis possibly related to his exposure, stating that "[v]ery occasionally pulmonary defects such as this can be related to fibrotic lung disease precipitated by inhalation injury." Dr. Tillinghast went on to state the following:
Our problem here is that the gentleman does indeed have fairly normal gas exchange when compared to alveolar volume in his lung volume studies. In layman's terms what this means is that lung volumes are decreased possibly because of his exogenous obesity rather than anything more significant as best you can determine short of a lung biopsy.... (Emphasis added).
He has no major large airway obstructive changes or permanent obstructive components here that would be considered the usual sort of residual injury from this type of exposure as best I can determine from the limited amount of information I have. [T]he patient's decrease forced vital capacity and total lung capacity as well as his decrease in his residual volume and total lung capacity ratios suggest that his body habitus may have something to do with this decrease. We do not see anything in *568 his chest x-rays to suggest fibrosis in my opinion. Consequently as best I can determine, it appears that he may have had some problems with inhalation injury that should have cleared by now, it should not limit him in the future.
In a letter dated January 22, 1992, Dr. Tillinghast noted plaintiff's persistent complaints about breathing problems; however, medical testing failed to identify a physiologic dysfunction. Dr. Tillinghast opined that a bronchoscopy, a thoracoscopy with a laser resection of lung tissue, or an open biopsy were the only ways to accurately determine if plaintiff had indeed suffered a lung injury related to his inhalation accident. On the advice of his attorney, plaintiff chose to forego these invasive procedures.
The doctor's conclusions suggest that plaintiff's "exogenous obesity" is as much to blame for his respiratory problems as any chemicals he may have inhaled. Dr. Tillinghast's findings provide little certainty other than plaintiff "may" have suffered or "possibly" suffered an inhalation injury. The accident's relationship to plaintiff's pulmonary complaints is questionable and has not been proven by a preponderance of the evidence. Failure to prove a work-related pulmonary injury precludes a finding of liability on the part of Fibrebond for medical expenses related to plaintiff's pulmonary testing. We therefore reverse that portion of the ruling casting Fibrebond liable for Dr. Tillinghast's bill.
In its appeal, Fibrebond does not dispute its liability for the ambulance bill. We therefore affirm that portion of the hearing officer's ruling ordering Fibrebond to pay this medical expense.
The hearing officer also ordered Fibrebond to pay a bill from the Minden Medical Center. Plaintiff submitted a series of medical bills prior to the administrative hearing; however, the bills did not include an invoice for Minden Medical Center. Our review of the record failed to disclose any such bill. If Fibrebond is responsible for the ambulance bill, it would likewise owe the emergency care bill. We therefore affirm the WCHO's ruling to the extent that sums remain owed to Minden Medical Center in connection with emergency care.

Penalties and Fees
In addition to the medical expenses, the hearing officer ordered Fibrebond to pay penalties and attorney fees for failure to pay the medical expenses promptly. Such penalties and fees are provided for under LSA-R.S. 23:1201 and 1201.2. The assessment of penalties is determined by inquiring whether the employer has "reasonably controverted" the compensation claim. LSA-R.S. 23:1201(E); Winn v. Thompson-Hayward Chemical Company, 522 So.2d 137 (La.App. 2d Cir.1988). An award of attorney fees is based upon a showing that an employer acted in an arbitrary and capricious manner in withholding compensation benefits. Johnson v. Vinson Guard Service, Inc., 92 2187 (La.App. 1st Cir. 03/11/94) 636 So.2d 914, writ denied, 94-1661 (La. 09/02/94), 642 So.2d 1280.
The hearing officer's reasons for judgment discuss no analyses employed to determine that penalties and attorney fees were warranted under the facts of this case. Instead, the reasons simply state that the penalties and fees are owing due to nonpayment of various medical bills. Whether the refusal to pay benefits warrants the imposition of penalties and attorney fees is a factual question which will not be disturbed on appeal absent manifest error. Pitcher v. Hydro-Kem Services, Inc., 551 So.2d 736 (La. App. 1st Cir.1989) writ denied, 553 So.2d 466 (La.1989). Our review of the record discloses no basis for an award of penalties and fees.
A dispute over the payment of medical bills, specifically the ambulance bill, could reasonably have been made once plaintiff's claims were jeopardized by his failure to truthfully respond to the medical questionnaire. Fibrebond did not learn of plaintiff's prior injuries until he was deposed in anticipation of trial. At that point, Fibrebond could have reasonably controverted plaintiff's compensation claim so as to preclude an award of penalties for its refusal to pay medical expenses. Likewise, failure to pay the claim in light of the facts would not *569 constitute arbitrary or capricious conduct. The record does not reflect whether the ambulance bill was presented before or after Fibrebond acquired knowledge about plaintiff's prior injuries. The hearing officer's ruling awarding penalties and fees is not supported by the record and we therefore reverse that portion of the judgment.

CONCLUSION
Plaintiff's workers' compensation claim related to his neck and back injuries was properly denied by the hearing officer. We also affirm that portion of the judgment ordering Fibrebond to pay expenses related to the ambulance that transported plaintiff to the hospital following his collapse at work and the emergency room care at Minden Medical Center. We reverse with respect to the hearing officer's award of payment for medical bills for pulmonary testing that did not satisfactorily prove a work-related injury. Finally, we reverse the hearing officer's award of penalties and attorney fees. Costs are assigned to plaintiff.
AFFIRMED IN PART AND REVERSED IN PART.