712 So.2d 169 (1998)
Robert D. MAYO, Plaintiff-Appellant,
v.
CASCO CONSTRUCTION CO., INC., Defendant-Appellee.
No. 30343-WCA.
Court of Appeal of Louisiana, Second Circuit.
April 8, 1998.
*170 Jack M. Bailey, Jr., Shreveport, for Plaintiff-Appellant.
Crawford & Anzelmo by Donald J. Anzelmo, Monroe, for Defendant-Appellee.
Before MARVIN, C.J., and STEWART and GASKINS, JJ.
STEWART, Judge.
The claimant, Robert D. Mayo (Mayo), appeals a decree from the Office of Worker's Compensation in favor of the employer CASCO Construction Company (CASCO), and against Mayo dismissing all claims for worker's *171 compensation benefits, medical benefits, penalties, and attorney fees, with prejudice, and at the cost of Mayo. The claim for worker's compensation and medical benefits was tried before the Honorable Linda Blackman, on April 8, 1997.
The hearing officer found that the Americans with Disability Act was not applicable because at the time in question, CASCO employed fewer than 15 employees. The hearing officer also found that all factors necessary for application of La. R.S. 23:1208.1 had been met by CASCO: a direct relationship between the answer elicited and the claim for benefits, untruthful statements on the Second Injury Questionnaire, and the notice requirement. Therefore, the hearing officer concluded that Mayo forfeited his worker's compensation and medical benefits. We affirm.

FACTS
It is undisputed that Mayo was involved in a work-related accident. Mayo alleges that he is entitled to workers' compensation and medical benefits in connection with the work-related accident which occurred on September 21, 1994. Mayo alleges that he suffered a left shoulder injury while carrying a heavy metal gate during the course and scope of his employment when a co-worker dropped his end of the metal gate.
Mayo reported the injury to his supervisor, Daniel Haugen, tied his shoulder up with a shirt and continued working in that manner for several days. After several days, he was bumped while working and because of the pain sought medical treatment for his left shoulder. Mayo was treated at LSU Medical Center in Shreveport by Dr. John Ferrell and at the VA Hospital.
On December 20, 1994, Mayo underwent acromioplasty surgery with a distal clavicle resection at the VA Hospital. Mayo had left shoulder acromioclavicular arthritis and left shoulder impingement syndrome which required the removal of part of his collar bone and part of his acromion. Mayo contends that he has had continuous problems with his left shoulder since the accident at CASCO that he takes prescription medication and that he has medical restrictions. Mayo further contends that his attempts to reenter the workforce have been unsuccessful because of his left shoulder injury and his illiteracy. Subsequently, Mayo was approved for Social Security Disability.
CASCO paid the medical bills of Dr. John Ferrell and the medical bills of the VA Hospital. However, Dr. Edwin Simonton and LSU Medical Center have not been paid. CASCO has not paid Mayo any worker's compensation wage indemnity benefits. As an affirmative defense, CASCO argued that Mayo's failure to reveal prior injuries on the company's Questionnaire required forfeiture of Mayo's worker's compensation and medical benefits under La. R.S. 23:1208.1.
When Mayo applied for employment with CASCO on August 23, 1994, he completed an application for employment and a Second Injury Fund Questionnaire but failed to reveal that he had undergone corrective surgery for a left rotator cuff injury, a right rotator cuff injury, carpal tunnel surgery, a knee injury and received worker's compensation benefits before applying to CASCO. The first question asked whether the applicant ever had epilepsy, convolutions or seizures to which Mayo responded "No." Mayo had epilepsy as a young child which he claims deprived his brain of oxygen, made learning difficult and resulted in him being functionally illiterate.
Mayo was informed by the claims adjuster that problems had arisen because of his answers to the Questionnaire regarding previous injuries that involved surgical correction of both the left and right rotator cuffs. The application to the Second Injury Fund on behalf of CASCO was denied because the employer could not establish any knowledge of Mayo's prior permanent partial disabilities.
Mayo's claim for benefits was tried before the Honorable Linda Blackman, on April 8, 1997. The hearing officer found that the ADA was not applicable because at the time in question, CASCO employed fewer than 15 employees and the only evidence to the contrary was Mayo's testimony. The hearing officer also made a credibility determination: "I have no doubt that Mr. Mayo knew and *172 understood that he ran the risk of forfeiting his benefits if he did not tell the truth on that Second Injury Fund Questionnaire or did not give truthful answers." The hearing officer rejected Mayo's illiteracy defense.
The hearing officer resolved credibility issues in favor of CASCO and concluded that there was a direct connection between the preexisting disabling condition or conditions and Mayo's present disability and that all factors necessary for application of La. R.S. 23:1208.1 had been met. On May 19, 1997, judgment was entered in favor of CASCO and against Mayo dismissing all claims for compensation benefits, medical expenses, penalties and attorney's fees, with prejudice, and at the cost of Mayo. A devolutive appeal was then filed on behalf of Mayo.

APPLICABILITY OF FEDERAL ACT
In assignment of error one, Mayo urges that the hearing officer erred in finding that La. R.S. 23:1208.1 was not preempted in this case by the Americans with Disabilities Act (ADA). Mayo argues that the American with Disabilities Act strictly prohibits the questions relied upon by CASCO to prove its affirmative defense under La. R.S. 23:1208.1 and the defense must be rejected. Therefore, he is entitled to receive workers' compensation benefits with CASCO receiving an offset for wages actually earned by Mayo since his injury.
CASCO takes the position that Mayo bears the burden of proving preemption contending that Mayo he urged the preemption but failed to present evidence that CASCO had the number of employees required for the ADA to apply. The ADA applies to employers engaged in an industry affecting commerce with 15 or more employees.
The hearing officer's factual findings in worker's compensation cases are subject to the manifest error rule or clearly wrong standard of appellate review. Seal v. Gaylord Container Corp., 97-0688, p. 4 (La. 12/02/ 97); 704 So.2d 1161; Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706; Mitchell v. AT & T, 27,290 (La.App.2d Cir. 8/28/95), 660 So.2d 204, writ denied, 95-2474 (La.12/15/95), 664 So.2d 456. Under the manifest error rule, the reviewing court does not decide whether the factual findings are right or wrong, but whether the fact finder's conclusion was a reasonable one. Seal, supra; Stobart v. State, Through Dept. of Transp. & Dev., 617 So.2d 880, 882 (La.1993); Lewis v. State, Through DOTD, 94-2370 (La.4/21/95), 654 So.2d 311. Reasonable evaluations of credibility and inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart, supra; Lewis, supra. Where there are two permissible views of the evidence, a fact finder's choice between them can never be manifestly erroneous or clearly wrong. Seal, 97-0688 at p. 5; Stobart, 617 So.2d at 882.
The hearing officer made a factual finding that "this particular employer did not have or exceed fifteen employees from the evidence that was presented" and that the evidence was not adequate to show an Americans with Disability Act (ADA) preemption. The only evidence presented to show that CASCO had fifteen or more employees during the employ of Mayo was the testimony of Mr. Mayo.
On the other hand, CASCO presented evidence to show that they did not have or exceed fifteen employees. Daniel Haugen, a CASCO supervisor, testified that he checked the records to determine the number of employees during the employ of Mayo and that during that period the number of employees varied between nine and fourteen. Mr. Haugen presented the payroll records for that period which was introduced into evidence.
We find no manifest error in the hearing officer's conclusion that the ADA is not applicable, since CASCO did not have or exceed fifteen employees during the employ of Mayo.

LA. R.S. 23:1208.1 BARS WORKERS' COMPENSATION BENEFITS
In assignment of error number two, Mayo urges that the hearing officer erred in finding that CASCO had proven Robert D. Mayo, appellant, was barred from receiving workers' compensation benefits by La. R.S. 23:1208.1. Mayo argues on appeal that he is functionally illiterate that he failed special education four times; that he was given an *173 honorable medical discharge from the Air Force after 21 days; and that he is able to sign his name and read some very simple words.
CASCO counters that Mayo is prohibited from receiving workers' compensation and medical benefits by La. R.S. 23:1208.1 because of his untruthful statements on CASCO's Confidential Second Injury Fund Questionnaire and because CASCO met the requirements set by the statute requiring forfeiture of benefits.
CASCO supports its position by relying on the Louisiana Supreme Court decision in Resweber v. Haroil Construction Company, 94-3138 (La.9/5/95), 660 So.2d 7. The Court noted that "the employer has the right to inquire about previous claims and past medical history of the employee; that there should be notice to the employee of the consequences of his false statement and that the false statement must cause prejudice to the employer, in that the false statement must either directly relate to the medical condition for which a claim for benefits is made or must affect the employer's ability to receive reimbursement from the Second Injury Fund." Resweber, supra.
Mayo counters by arguing that he was born with a brain injury which deprived his brain of oxygen, resulting in epileptic seizures and that he was able to complete the application for employment by copying information from a piece of paper his wife constructed for him. Mayo further argues that he did not have any information to copy over to the Questionnaire and that he could not read a majority of the questions. Mayo argues that he checked "no" next to each question and that he checked "yes" next to one question because it contained the word "back" which he recognized as he had a prior L4-L5 herniated disc. Mayo argues that he answered honestly and accurately, provided he could not read, has a limited education and did not understand the statement provided in bold letters, which stated that he may not be entitled to receive workers' compensation benefits should any of the information he supplied be untruthful.
In support of his illiteracy defense, Mayo offered the testimony of his wife, the depositions of Kathleen Gay, the Director of Project R.E.A.D. in Bossier Parish, and Jerry Allen, Director of Adult Education at Bossier Parish Community College. The two depositions relied upon by Mayo to establish his illiteracy revealed that Mayo could not have filled out the Questionnaire alone unless he either had a very good visual memory or was literate. In other words, a person who is illiterate would not have been able to complete the Questionnaire as Mayo did. Furthermore, in his statement to the claims adjuster Mayo stated "I'm not illiterate but I'm what they call borderline."
There is no doubt that the Questionnaire contained incorrect and untruthful statements. The Questionnaire fails to give evidence of four prior disabling conditions and about seven or eight prior worker's compensation claims. The hearing officer would be reasonable in concluding that Mayo would be able to identify the words "worker's compensation" on the questionnaire, considering the number of previous worker's compensation claims he filed. Mayo did not inform anyone at CASCO that he is functionally illiterate, nor did he ask for help to complete the Questionnaire.
In a worker's compensation case, as in other cases, we are bound by the manifest error rule and we may not set aside the factual findings of the hearing officer absent a finding by this Court that they are clearly wrong or manifestly erroneous. Stobart, supra; Lewis, supra. In rejecting Mayo's illiteracy defense the hearing officer stated:
"I question how anybody that could not read could put check marks where he did. If he had put answers everywhere of no, then it would have been easier to accept, but for some reason he chose to say, yes, he had a back injury. We know and now find that he has four disabling conditions at the time that he accepts employment, and then we know that he has post injury earnings ... I appreciate that his education is something that was probably lacking, but I don't think that illiteracy in this particular instance is the reason that the Questionnaire fails to give evidence of four prior disabling conditions and about seven or eight prior worker's compensation *174 claims. Mr. Mayo was not up front and candid with the Court ... and as a factual matter given all of the evidence here, I find that Mr. Mayo was untruthful."
There is ample evidence to show that Mayo did not respond truthfully to the questions on the Second Injury Fund Questionnaire. There is also sufficient testimony to substantiate the hearing officer's finding that Mayo gave inconsistent and untrue information to CASCO. The hearing officer's exercise of discretion in assessing witness credibility is beyond the scope of our examination. The testimony and evidence are sufficient to support the conclusion that Mayo completed the Questionnaire and failed to answer truthfully concerning his prior injuries. We find no manifest error in the hearing officer's credibility determination that Mayo was untruthful on the Questionnaire.
In reaching this determination, the hearing officer applied the worker's compensation statute, La. R.S. 23:1208.1 which states that "an employer may inquire about previous injuries or medical conditions and that the employee shall answer truthfully or else forfeit benefits." This is conditioned upon the presence of three factors: an untruthful statement; direct relationship between answer elicited and the claim for benefits or ability to receive reimbursement from Second Injury Fund; and the employer's compliance with statutory notice requirements. An employee/applicant fails to answer truthfully when he clearly indicates "no" on the employer's questionnaire, denying the existence of a known medical condition. Carter v. Our Lady of Lake Regional Medical Center, 612 So.2d 805 (La.App. 1 Cir.1992); Williams v. Fibrebond, 27,401, 27,402 (La.App. 2 Cir. 9/27/95), 661 So.2d 562; Burris v. LaSalle Parish Police Jury, 95-696 (La.App. 3 Cir. 11/2/95), 664 So.2d 680; Stevens v. Bechtel Construction Corp., 94-1825 (La App. 4 Cir. 4/26/95), 655 So.2d 423, rehearing denied, writ denied, 95-1823 (La.10/27/95), 661 So.2d 1346, reconsideration denied 95-1823 (La.12/8/95), 664 So.2d 416.
The first prong of the test is an "untruthful statement," such as the purposeful omission or mischaracterization of previous injuries and medical conditions. When findings are based on determinations of the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings. The trier of fact, of course, is aware of the variations of demeanor and tone of voice that bear heavily on the listener's understanding and belief in what is said. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993). We accept the hearing officer's conclusion that Mayo was untruthful on the questionnaire.
Because untruthful answers alone do not result in the forfeiture of benefits, the next step is to determine whether the employer's form inquiring about prior medical conditions complied with the notice requirements of the statute advising the employee that failure to answer truthfully may result in forfeiture of worker's compensation benefits. The notice is to be displayed in bold faced block lettering of no less than ten-point type. The employer must comply with the notice requirement and prove that the untruthful statements were prejudicial to the employer. Resweber v. Haroil Construction Co., Inc., 94-297 (La.App.3 Cir. 10/5/94), 644 So.2d 423, writ granted 94-2708 (La.2/9/95), 649 So.2d 413, reversed on other grounds, 94-2708, 94-3138, (La.9/5/95), 660 So.2d 7; Alexander v. Conagra Broiler Co., 93-1671 (La.App. 3 Cir. 7/13/94), 641 So.2d 621; Carter v. Our Lady of Lake Regional Medical Center, supra.
In the instant case, the parties stipulated that the statutory notice requirements had been met. Therefore, we turn to address whether Mayo's untruthful statement about his previous injury is directly related to his current medical condition and whether CASCO was prejudiced by the untruthful statement. First, we must consider whether CASCO was prejudiced by the untruthful statement. The employer is prejudiced when (1) the employee's untruthful answer directly relates to the medical condition that is the subject of the claim; (2) the employer is prejudiced when the employee's answer to the employer's questionnaire affects the employer's ability to recover from the second injury fund. La. R.S. 23:1208.1; Resweber, supra.
*175 Mayo argues that his left shoulder impingement injury and acromioplasty surgery with a distal clavicle resection is not identical to his left rotator cuff injury and surgery. The Second, Third and Fourth Circuits have concluded that "directly related" pursuant to La. R.S. 23:1208.1 refers to "a previous condition that made the injury for which the present claim is filed inevitable or very likely to occur, i.e., given the pre-job medical condition of the employee, a recurrence of that condition or some other type of injury was bound to happen while the employee was performing the regular job duties for the employer because of the presence of the preexisting condition." Wise v. J.E. Constructors, Inc., 97-0684 (La.1/21/98); 707 So.2d 1214, Williams v. Fibrebond Corp., supra; Stevens v. Bechtel Construction Corp., supra; Williams v. Holy Hill Nursing Home, 93-557 (La.App. 3 Cir. 3/30/94), 640 So.2d 383, writ denied, 94-1134 (La.7/1/94), 641 So.2d 208.
In the instant case, the hearing officer ruled that Mayo had forfeited his rights to benefits under La. R.S. 23:1208.1 because CASCO's rights had been prejudiced by the direct relationship between the preexisting disabling condition or conditions and Mayo's present disability. The hearing officer found that Mayo's previous left rotator cuff injury was in the same shoulder as the current injury, in the same place, generally occurring as a result of the same types of movements and that those movements are consistent with the very nature of his employment which required overhead reaching and heavy lifting.
Mayo's claim arose when a co-worker dropped the end of a metal gate that he and Mayo were carrying during the course and scope of his employment. The only analysis of Mayo's injuries was expressed through copies of his medical records from LSU Medical Center-Shreveport, Dr. John Ferrell, and the VA Hospital. Mr. Mayo's medical records contain notations that his left shoulder revealed a well-healed surgical scar from previous left shoulder surgery and that Mayo was complaining of "pain under the scar especially with forward stress, and crepitance with abduction and rotation," with pre-operation notations of possible left rotator cuff tear. The medical records regarding Mayo's left shoulder also noted narrowing of the anterior cruciate joint space, AC arthritis, carpel tunnel syndrome and roughening of the AC articular margins in the left shoulder. Postoperative notes indicate that the surgery involved areas of the left shoulder attached to the left rotator cuff.
We conclude that the pre-job condition of Mayo's left shoulder made the injury for which the present claim is filed inevitable or very likely to occur. Mayo's regular job duties at CASCO required heavy lifting and overhead reaching which made him susceptible to injury because of the presence of the preexisting condition. The physical requirements of the job required Mayo to use previously injured areas of his body. Therefore, a recurrence of that condition or some other type of injury was bound to happen while Mayo was performing his regular job duties for CASCO. The evidence supports the conclusion that Mayo's failure to answer truthfully concerning his prior injuries is directly related to his current claim.
We find a direct relationship between Mayo's untruthful responses to the questionnaire and his preexisting disabling condition or conditions and Mayo's present disability. Finding this relationship, we need not consider the success of any claim made to the second injury fund. The forfeiture of Mayo's worker's compensation claim under La. R.S. 23:1208.1 is therefore affirmed.

WORKER'S COMPENSATION MEDICAL BENEFITS
In assignment of error number three, Mayo urges that if La. R.S. 23:1208.1 prevents him from receiving workers' compensation indemnity benefits, then the hearing officer erred in failing to award him worker's compensation medical benefits. Mayo argues that Dr. Edwin Simonton and LSU Medical Center medical bills relating to his on the job injury have not been paid and that Rivera v. West Jefferson, 678 So.2d 602 (La. App. 5th Cir.1986) held that even though the employee had forfeited the right to benefits by making a false statement on a preemployment questionnaire, he was entitled to all *176 medical benefits which were related to the on-the-job accident.
CASCO counters Rivera, supra, does not support the present claim and that the statutory language "forfeiture of benefits" has been interpreted by the courts as dismissing claims for compensation and medical benefits due to a violation of La. R.S. 23:1208 and that the hearing officer's decision to deny medical benefits is supported by the evidence and by the law of this state.
The anti-fraud provisions of the Louisiana Worker's Compensation Act are contained in La. R.S. 23:1208 and 1208.1. La. R.S. 23:1208.1 determines the effect of a false statement or misrepresentation on a workers' compensation claim. The triggering mechanism which makes this provision applicable is the making of a false statement or misrepresentation, not the occurrence of an accident or injury. Accordingly, it is the date the false statement or misrepresentation was made that is determinative. Resweber, supra at 17. La. R.S. 23:1208.1 is penal in nature.
CASCO had probable cause to terminate payment of any benefits because of the serious factual dispute as to whether Mayo was entitled to any benefits in accordance with La. R.S. 23:1208.1. A dispute over the payment of medical bills could reasonably have been made once Mayo's claims were jeopardized by his failure to truthfully respond to the medical questionnaire. It is important to note that the triggering mechanism is the making of a false statement and the date the false statement or misrepresentation was made. Mayo completed the questionnaire on August 23, 1994. The medical bills of Dr. Edwin Simonton were incurred between May 1995 and July 1995. LSU Medical Center's medical bills were incurred in October 1994.
On October 18, 1994, Susan Mack, the claims adjuster, phoned Mayo to inform him that she had been in communication with CASCO and that there were discrepancies between the questionnaire and the information that Mayo had provide to her on October 12, 1994 regarding prior injuries. CASCO did not learn of Mayo's prior injuries until their communication with the claims adjuster. At that point, CASCO could have reasonably controverted Mayo's compensation claim by refusing to pay medical expenses incurred after their communications with the claims adjuster.
Therefore, we affirm the hearing officer's finding that Mayo forfeited his right to recover those medical charges, in connection with his workers' compensation claim, that were incurred after Mayo made false statements on the second injury fund questionnaire, in accordance with La. R.S. 23:1208.1.

PENALTIES AND ATTORNEY'S FEES
Finally, Mayo urges that the hearing officer erred in failing to award penalties and attorney's fees. Mayo argues that CASCO was arbitrary and capricious in failing to pay his worker's compensation benefits in view of the fact that CASCO never had any proof of a direct relationship between Mayo's prior rotator cuff tear and the shoulder injury that he sustained at CASCO and that CASCO should be assessed the maximum penalty and $12,500.00 in attorney's fees.
CASCO counters that the assessment of penalties is determined by inquiring whether the employer has reasonably controverted the compensation benefits and that the evidence overwhelmingly supports the conclusion that CASCO reasonably controverted the claim for compensation and medical benefits.
The employer or its insurer must pay benefits within 14 days of notice of the injury and loss; failure to pay timely subjects the liable party to a penalty of 12 percent, "unless such nonpayment results from conditions over which the employer or insurer had no control" or "the employee's right to such benefits has been reasonably controverted by the employer or his insurer." La. R.S. 23:1201 E; Barton v. Wausau Ins. Co., 545 So.2d 1248 (La.App. 2d Cir.1989). The statute further provides for attorney fees in the event that failure to pay benefits within 60 days of receipt of written notice is found to be "arbitrary, capricious, or without probable cause." La. R.S. 23:1201.2. These provisions are penal in nature and must be strictly construed, allowing recovery only when the facts of the case negate probable *177 cause for nonpayment. Stevens v. Wal-Mart Stores, Inc., 27,977 (La.App. 2 Cir.11/1/95), 663 So.2d 543, 547. A compensation insurer or employer is liable for attorney's fees when it arbitrarily, capriciously or without probable cause, terminates or refuses to pay benefits. LSA-R.S. 23:1201.2.
The determination of whether the denial of compensation benefits is arbitrary, capricious, and without probable cause depends primarily upon the facts existing and known to the employer at the time the employer denies benefits. The determination is essentially a question of fact. Holmes v. Int'l. Paper, 559 So.2d 970 (La.App. 2 Cir.1990); Hughes v. General Motors Guide Lamp Div., 469 So.2d 369 (La.App. 2 Cir. 1985). The failure to pay benefits is not arbitrary and capricious when it is based upon substantial bona fide factual contentions. Id. Harrison v. Chicago Mill & Lumber Co., 446 So.2d 843 (La.App. 2 Cir.1984); Bradley v. Morton Thiokol, Inc., 27,411 (La. App. 2 Cir. 9/29/95), 661 So.2d 691, 697.
Based upon the record, the hearing officer could conclude that not only were there factual disputes, but that CASCO's refusal to pay benefits is based upon a substantial bona fide factual contention that Mayo had forfeited his claim for benefits. Therefore, failure to pay the claim in light of the facts would not constitute arbitrary or capricious conduct. The record does reflect that the medical bills were incurred after CASCO acquired knowledge about Mayo's prior injuries.
We find that CASCO was not arbitrary and capricious in its failure to pay worker's compensation benefits or medical benefits in connection with Mayo's worker's compensation claims, where Mayo made false statements on the second injury fund questionnaire.

DECREE
For the foregoing reasons, we affirm the judgment of the trial court. All court costs are assessed against the appellant, Robert D. Mayo.
AFFIRMED.