678 So.2d 602 (1996)
Miguel RIVERA
v.
WEST JEFFERSON MEDICAL CENTER.
WEST JEFFERSON MEDICAL CENTER
v.
Miguel RIVERA.
Nos. 96-CA-152, 96-CA-153.
Court of Appeal of Louisiana, Fifth Circuit.
July 30, 1996.
*603 Melvin Ripp, Jr., Stumpf, Dugas, LeBlanc, Papale & Ripp, Gretna, for Plaintiff/Appellant.
Timothy J. Falcon, Sean M. Culhane, Marrero, for Defendant/Second Appellant/Appellee.
Before BOWES, DUFRESNE and GOTHARD, JJ.
GOTHARD, Judge.
This action was instituted in the Office of Workers' Compensation on April 4, 1994 with the filing of a disputed claim for compensation and a rehabilitation services dispute form by West Jefferson Medical Center (West Jefferson). The form avers that Miguel Rivera, an employee of West Jefferson, "has no objective findings to substantiate his *604 subjective complaints", and seeks reimbursement of compensation paid in the amount of $10,112.80.
On January 19, 1995, Miguel Rivera filed a disputed claim for compensation, alleging that he was injured in two work-related accidents which occurred on June 8, 1993 and October 22, 1993 respectively. The claim further alleges that his employer, West Jefferson, refused to pay the medical bills of Dr. William Batherson in regard to treatment rendered as a result of a work-related illness. The two matters were consolidated.
After a trial on the merits held on October 5 and 6, 1995, the trial court rendered judgment finding that Miguel Rivera was injured in the course and scope of his employment with West Jefferson on June 8, 1993, and was entitled to temporary total disability benefits, medication expenses and transportation expenses arising out of that accident. However, the trial court found that Miguel Rivera forfeited his rights to recover benefits for the October 22, 1993 accident, "because of his actions of willfully making false statements and misrepresentations, in violation of R.S. 23:1208 and R.S. 23:1208.1". Additionally, the trial court did not find West Jefferson arbitrary and capricious in its refusal to pay benefits. Both parties have filed an appeal.
At trial, the parties stipulated that:
1. Mr. Rivera had an accident on June 8, 1993 and was paid benefits for which no claim for reimbursement is made by West Jefferson.
2. Mr. Rivera was an employee of West Jefferson on October 22, 1993.
3. West Jefferson paid $4,803.58 in compensation benefits from October 22, 1993 through April 14, 1993.
Mr. Rivera testified at trial that he was injured on June 8, 1993 when he fell while climbing a ladder. He landed on his back, and the motor he was carrying landed on his chest. He reported the incident to his supervisor, but did not seek medical treatment until the next day.
Mr. Rivera further testified that on October 22, 1993 he injured his back when he helped a fellow employee lift an ice machine.
Mr. Rivera testified that he was in the shop when Irby Crulee came in to get help to lift an ice machine. Mr. Rivera and a fellow employee, Tim Burr, went to the boiler room to help. The ice machine, which was about six feet tall and heavy, was on a cart. As soon as the three men lifted the cart, Mr. Rivera felt a burning sensation in his back. Mr. Rivera immediately went to his supervisor, Ricky Victoriano, and asked to be allowed to go home. After receiving permission to leave, Mr. Rivera drove to the office of Dr. Jerome Malina, a chiropractor with Spine Care Plus, Inc., and reported the injury. Dr. Malina told Mr. Rivera not to return to work, and not to do any lifting. Several days later Mr. Rivera received a letter from Mr. Edward Sessum, director of engineering at West Jefferson, saying that Mr. Rivera had abandoned his job at West Jefferson. Mr. Rivera called and explained to one of the engineers on duty that he was unable to work. The engineer to whom he spoke informed him it would be necessary to call Mr. Sessum. Mr. Rivera stated that he tried, but was unable to reach Mr. Sessum. He called Denis Lamonica at West Jefferson and explained the problem to him.
Mr. Rivera received a second letter from Mr. Sessum the next day stating that Mr. Rivera must return to work or see Mr. Sessum. To resolve the matter, Mr. Rivera personally went to Mr. Sessum's office. Mr. Rivera asserted he resigned his employment with West Jefferson because he was "pushed out". He felt the supervisors at West Jefferson purposely tried to make him feel uncomfortable after his June accident.
Dr. Jerome Malina testified that he treated Mr. Rivera on June 18, 1993 for back pain. Mr. Rivera reported that he fell from a ladder, about 14 or 15 feet to the ground on June 8, 1993. The physical examination done by Dr. Malina revealed bruises on the left arm and right thigh, and diminished cervical range of motion in all planes. Pursuant to the diagnosis, Dr. Malina prescribed various modes of therapy, including moist heat, electric muscle stimulation and ultrasound. The treatments lasted until July 27, 1993, although Mr. Rivera was released for light duty on July 2, 1993. However, because *605 Mr. Rivera told the doctor that no light work was available, Dr. Malina removed Mr. Rivera from all work until July 27, 1993.
Mr. Rivera returned to Dr. Malina on October 20, 1993, complaining of back pain. He returned on October 22, 1993 and told the doctor he had re-injured his back lifting an ice machine at work. Mr. Rivera again began treatment with the chiropractic clinic, which lasted until April 26, 1994. Dr. Malina opined that the back injury suffered by Mr. Rivera was directly related to the work related accidents. He further stated that, in his opinion, the incident on October 22, 1993 did not create a separate injury, it merely exacerbated the injury sustained in the June accident. On cross-examination, Dr. Malina stated that Mr. Rivera denied injuring his back at any time prior to the June accident.
Sherry Rivera, the claimant's wife, testified that during the seven years of their marriage, Mr. Rivera was physically active and did not complain of pain before his accident at West Jefferson in June, 1993. He was able to do all the maintenance on the house and often accompanied his family on outings and trips. Subsequent to the accident he suffered with back and leg pains severe enough to curtail his previous activities. However, on cross-examination, Mrs. Rivera confirmed that, in 1987, one year before the couple was married, she testified in a tort action brought by Mr. Rivera as to the extent of back injury he sustained in an automobile accident.
Irby Crulee, Jr., a relief engineer employed by West Jefferson testified that it was his responsibility to move the ice machine into the shop area for repairs on October 22, 1993. He stated that Mr. Rivera was not among the employees who helped him move the ice machine on that day. He further stated that he was there the entire time the machine was moved to the shop, and that he repaired the machine himself. At no time during the process did Mr. Rivera touch the machine. Mr. Crulee stated that he was certain he did not ask Mr. Rivera to help because he knew Mr. Rivera had injured his back previously in a work related accident.
Helen Buckel, who has been employed in the maintenance department of West Jefferson for twenty-five years, testified that she filled out an accident report for Mr. Rivera in June, 1993 after he fell from a ladder at one of the medical center's satellite clinics. On the day after the incident, June 9, 1993, Mr. Rivera came into her office, explained what happened and answered her questions. Ms. Buckel filled out an accident report based on Mr. Rivera's statements to her. She refuted Mr. Rivera's contention that she filled out the report without his input.
In regard to the question of whether an accident occurred on October 22, 1993, Ms. Buckel testified that Mr. Rivera made three or four maintenance calls in the morning. Later he went to the Gretna classroom facility to attend a one hour meeting for OSHA, a requirement for all employees. The meeting was concluded about 1:00 P.M. Mr. Rivera clocked out at about 1:30 P.M. complaining of illness. Ms. Buckel gleaned the information about Mr. Rivera's activities on October 22, 1993 from records she keeps in the normal course of her duties. Mr. Rivera did not report an accident on October 22, 1993 to Ms. Buckel.
Ricky Victoriano, the maintenance supervisor for West Jefferson, testified that, at about 1:30 P.M. on October 22, 1993, Mr. Rivera returned from a OSHA seminar. He asked to be allowed to go home because his back was hurting. He made no mention of moving an ice machine.
Edward Sessum, Sr., director of engineering for West Jefferson, testified that he interviewed Mr. Rivera for employment with West Jefferson. The purpose of the interview was to establish his qualifications to perform the work that would be assigned to him. Mr. Rivera presented himself as qualified by a second class engineer's license in refrigeration and steam boilers with thirteen years experience at Tulane. Mr. Sessum testified that Mr. Rivera was, "very emphatic in telling me that he could repair any refrigeration or steam vessel that was under his responsibility". In the interview, Mr. Rivera also claimed to be experienced in plumbing, and indicated he could do electrical work as a result of his tenure at Tulane. Mr. Rivera was hired based on those representations.
*606 In further testimony, Mr. Sessum maintained that after an eight-week training period, Mr. Rivera was supposed to complete work orders that were assigned. But, he was unable to complete the tasks assigned without supervision. By law, Mr. Rivera was required to post his license in the boiler room. His failure to do this after several promptings caused him to be "written up". He was also "written up" for his inability to repair a refrigeration unit. In another incident described by Mr. Sessum, Mr. Rivera was reprimanded for ordering a gauge from a supply house for his personal use and charging it to the hospital's account. Mr. Sessum stated that he reviewed the work orders for October 22, 1993, and found none which pertained to Mr. Rivera.
Mr. Rivera verified that, on his application for employment with West Jefferson, he stated he had a second class air conditioning and boiler license. Mr. Rivera also indicated he came from Tulane, where he was employed in the maintenance department for thirteen years. However, at the time of the employment interview with West Jefferson, Mr. Rivera maintains he explained to Mr. Sessum that he did not use the air conditioning and boiler repair skills during his tenure at Tulane, but simply called the maintenance department to fix anything that needed repair. A fact Mr. Sessum denied.
In further testimony, Mr. Rivera acknowledged his signature on the pre-employment health questionnaire in which he stated that he had no prior injuries to his back or knees. Contrary to that declaration, Mr. Rivera admitted at trial that, in fact, he injured both his foot and his eye while employed at Tulane, and that he injured his back in an automobile accident prior to his employment at West Jefferson. However, he maintained that it was unnecessary to inform West Jefferson of the injuries because he was no longer bothered by them. When confronted with a statement in his deposition about truthfulness in which he answered, "you tell the truth sometimes, when you feel like it", Mr. Rivera explained, "Well, I believe everybody is a human being. Sometime they lie. Sometime they don't lie. I mean, I don't, you know, I don't know. I guess sometime you lie for little things. Everybody lie (sic)."
In further questioning regarding the written responses to questions on the pre-employment health questionnaire, Mr. Rivera acknowledged that he specified "none" in answer to the question concerning which physicians were consulted, and what treatments were received prior to the employment application. But, he conceded at trial that he was in an automobile accident in 1987 in which he sought medical treatment for a low back injury. He also admitted that he suffered burns to his leg while working at Tulane in 1985 for which he probably sought treatment. Upon further cross-examination, Mr. Rivera acknowledged he actually had at least three automobile accidents prior to June, 1993. He admitted to seeking treatment from various physicians and receiving a monetary settlement for a low back injury as a result of a lawsuit filed in the 1987 automobile accident. It is also apparent from his testimony that he had several on-the-job injuries. Mr. Rivera justified his failure to account for the various injuries by stating that they were all completely resolved by the time he applied for employment with West Jefferson and he simply forgot about them.
The court also heard testimony from Leonard Hale, vice-president of human resources for West Jefferson. He said that Mr. Rivera came into his office several days after October 22, 1993 and said that he hurt his back. Since no report of injury had been filed, it was assumed Mr. Rivera's back pain was related to the June accident, and he was sent to the clinic for treatment. Subsequently, pursuant to documents received from treating physicians dated October 28, 1993 and February 2, 1994, Mr. Hale authorized payment of worker's compensation benefits to Mr. Rivera. Further, a request by one of the doctors for a nerve conduction needle EMG dated December, 1993 was approved by Mr. Hale. Although an appointment for the diagnostic test was made with Dr. Sumner, Mr. Rivera refused to take the test.
Mr. Rivera testified that he refused to take the nerve conduction needle test because he was frightened. He did not understand what the test involved and it sounded very painful.
*607 There is evidence in the record which shows that Mr. Rivera did take the diagnostic test at a later date.
Subsequently, pursuant to a doctor's report, West Jefferson requested that Mr. Rivera return to light duty. Mr. Hale testified that he instructed Mr. Sessum to schedule a functional capacity evaluation and structure a light duty environment for Mr. Rivera. However, Mr. Rivera refused to go through the functional capacity evaluation. After a request by Mr. Rivera's legal counsel, Mr. Hale agreed to schedule a second functional capacity evaluation, with which Mr. Rivera cooperated. After the evaluation, Mr. Rivera was given light duty assignments in keeping with this physical ability. However, a few days later, on May 4, 1994, Mr. Rivera resigned his employment. Mr. Hale further testified that West Jefferson paid $4,803.58 in worker's compensation benefits as a result of the October 22, 1993 incident. According to Mr. Hale's testimony, although West Jefferson received a letter from Mr. Rivera dated October 20, 1993 informing them that Dr. Batherson was Mr. Rivera's physician of choice, Dr. Batherson's bill was not paid. Mr. Hale explained that West Jefferson simply received a statement of charges billed from Dr. Batherson. Mr. Hale maintained that the bill was not paid because there was nothing to indicate the charges were for treatment related to an injury sustained at West Jefferson.[1]
The hearing officer also considered testimony given by depositions of Mark Collier, a maintenance worker at West Jefferson and Dr. Austin Sumner, a neurologist. Mr. Collier testified that he was a co-worker of Mr. Rivera on October 22, 1993. He further testified that it was Irby Crulee and Russell Stein who helped him move the ice machine on that day. The three men moved the machine from the boiler house to the shop, a distance of about 300 feet. He stated unequivocally that Mr. Rivera did not touch the ice machine.
The deposition of Dr. Austin Sumner was also offered into evidence. Dr. Sumner is a neurologist who conducted the nerve conduction and needle EMG study on Mr. Rivera. Dr. Sumner testified that he first saw Mr. Rivera on June 1, 1994. At that time Mr. Rivera complained of chronic back pain and pain radiating in the right leg down the outer side of the lower leg on to the dorsum of the foot. Mr. Rivera reported to Dr. Sumner that he was in good health until he had a work-related accident in June, 1993. Mr. Rivera stated that his symptoms seem to abate until a second accident occurred in October, 1993, causing his symptoms to worsen.
Dr. Sumner stated that at the time of the examination in June, 1994, Mr. Rivera had minimal neurological abnormalities with no limitation of straight-leg raising, or evidence of spasm of the paraspinous muscles. He had no atrophy of the muscles of the right lower extremity or elsewhere. His deep tendon reflexes were all present, and all of the muscles of his lower extremities were of normal strength, with the exception that he had mild weakness of extending in his right great toe. Dr. Sumner opined that Mr. Rivera had evidence of a mild deficit within the nerve supply of the lumbar fifth root in the right leg.
After electro-diagnostic testing, Dr. Sumner found that Mr. Rivera had some mild partial chronic denervation detected in two muscles, the right paraspinous longus muscle, which is the muscle in the lower leg that turns the foot outwards, and the extensor hallucis longus muscle, which is responsible for lifting the great toe. Other muscles supplied by the fifth nerve root were normal, and there was no evidence of ongoing or more acute nerve damage. The changes found were indicative of healing changes after previous nerve damage.
An MRI was conducted after the first accident which indicated no abnormalities. A second MRI was conducted on July 25, 1994 to determine if the second accident caused any change. Dr. Sumner explained that he was looking for evidence of a herniated intervertebral disk that would be pressing on the L-5 root, or a degenerative change in the *608 spine. Neither abnormality was found on the repeat MRI, which was also normal. Dr. Sumner's diagnosis was that, while there was evidence that some damage to the L-5 nerve root had occurred, it was in a healing mode. Dr. Sumner opined that the damage was preexisting and not ongoing. Dr. Sumner stated that the type of injury sustained by Mr. Rivera could have occurred simply as a result of the normal wear and tear of everyday life. However, given Mr. Rivera's history, Dr. Sumner believed the injury was likely caused by an accident; although, Dr. Sumner could not determine when the injury occurred or which accident caused it.
Finally, Dr. Sumner stated that there was no contraindication that Mr. Rivera should not be successful with a work-hardening physical therapy and progressive rehabilitation program. When questioned further, Dr. Sumner testified that Mr. Rivera could return to physical activity, including his job, with some restrictions on heavy lifting.
After a review of all the evidence, the hearing officer held that Mr. Rivera was injured by accident during the course and scope of his employment with West Jefferson on June 8, 1993, and that he is entitled to temporary total disability benefits, medical expenses and transportation as a result of that accident. The officer further ruled that Mr. Rivera forfeited his rights to recover benefits for the October 22, 1993 accident because of his actions of willfully making false statements and misrepresentations, in violation of LSA-R.S. 23:1208 and 23:1208.1, and that West Jefferson was not arbitrary and capricious in their refusal to pay benefits.
Both parties appealed the judgment. In brief to this Court, Mr. Rivera argues the hearing officer erred in ruling that Mr. Rivera forfeited his rights to recover benefits for the October 22, 1993 accident, and in ruling that West Jefferson was not arbitrary and capricious in failing to pay benefits. West Jefferson asserts the hearing officer erred in:
1. failing to order Miguel Rivera to return to West Jefferson $4,803.58 in benefits paid as a result of the October 22, 1993 accident.
2. failing to imprison and/or fine Mr. Rivera in accordance with LSA-R.S. 23:1208.
3. failing to assess costs of the proceedings to Mr. Rivera.
4. failing to allow a proffered medical report into evidence.
At the root of the main arguments for both sides is the correctness of the hearing officer's finding that Mr. Rivera forfeited his rights to worker's compensation benefits resulting from the October 22, 1993 accident for making a false statement on the preemployment medical questionnaire.
The anti-fraud provisions of the Louisiana Worker's Compensation Act are contained in LSA-R.S. 23:1208 and 1208.1 LSA-R.S. 23:1208, as it existed in February, 1993, at the time Mr. Rivera completed the preemployment health form, provided in pertinent part as follows:[2]
A. If, for the purpose of obtaining or defeating any benefit or payment under the provisions of the Chapter, any person, either for himself of any other person, willfully makes a false statement or representation, he shall be fined not more that five hundred dollars or imprisoned for not more than twelve months, or both.
B. In addition to the criminal penalties provided for in Subsection A of this Section, any person violating the provisions of this Section may be assessed civil penalties by the director of not less than one hundred nor more that five hundred dollars.
C. Any employee violating this Section shall, upon determination by a hearing officer, forfeit any right to compensation benefits under this Chapter.
That statute was amended by act 829 of 1993, effective June 22, 1993. Thus, the statute in effect on October 22, 1993 reads in pertinent part as follows:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating *609 any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
B. It shall be unlawful for any person, whether present or absent, directly or indirectly, to aid and abet an employer or claimant, or directly or indirectly, counsel an employer or claimant to willfully make a false statement or representation.
. . . . .
(2) Whoever violates any provision of this Section, when the benefits claimed or payments obtained have a value of two thousand five hundred dollars or more, but less than a value of ten thousand dollars shall be imprisoned, with or without hard labor, for not more than five years, or fined not more than five thousand dollars, or both.
. . . . .
D. In addition to the criminal penalties provided for in Subsection C of this Section, any person violating the provisions of this Section may be assessed civil penalties by the director of not less than five hundred dollars nor more than five thousand dollars.
E. Any employee violating this Section shall, upon determination by hearing officer, forfeit any right to compensation benefits under this Chapter.
LSA-R.S. 23:1208.1 provides as follows:
Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold faced block lettering of no less than ten point type.
Recently, in Resweber v. Haroil Const. Co., 94-2708, (La. 9/5/95), 660 So.2d 7, the Supreme Court discussed the proper interpretation and application of the two statutes. In that case at 660 So.2d at 9, the Court made the following statement:
... We hold that each of these anti-fraud provisions serves a specific purpose and applies to different situations. Louisiana Revised Statutes 23:1208 applies to any false statement or misrepresentation, including one concerning a prior injury, made specifically for the purpose of obtaining workers' compensation benefits and therefore generally becomes applicable at the time of an employee's accident or claim. This broadly worded statute encompasses false statements or misrepresentations made to anyone, including the employer, physicians or insurers, when made willfully or deliberately for the purpose of obtaining benefits. It contains no requirement that an employee be put on notice of the consequences of making such false statements or misrepresentations. The purpose of La.R.S. 23:1208.1, however, is to allow the employer to ask prospective or current employees about prior injuries. It applies to employment-related questioning of an employee or prospective employee, by an employer, concerning a prior injury, when there is no pending workers' compensation claim. The statute results in the forfeiture of a claimant's workers' compensation benefits when that claimant made false statements concerning a prior injury in response to such an inquiry. For Section 1208.1 to be enforceable, written notice must be given to the employee that giving false statements may result in the forfeiture of workers' compensation benefits.
It is clear from the above cited opinion that either statute can be applied to instances in which it is alleged that an employee has made a false statement or misrepresentation in a worker's compensation matter. In the case at bar, the hearing officer found that Mr. Rivera "has forfeited his *610 rights to recover benefits for the October 22, 1993 accident because of his actions of willfully making false statements and misrepresentations, in violation of R.S. 23:1208 and R.S. 23:1208.1." The hearing officer described Mr. Rivera as having "credibility problems" and found that his misrepresentations and untruthfulness were willful.
In a worker's compensation case, as in other cases, we are bound by the manifest error rule and we may not set aside the factual findings of the hearing officer absent a finding by this Court that they are clearly wrong or manifestly erroneous. Kampen v. Conway Southwest Exp., 95-45 (La.App. 5th Cir. 4/12/95), 655 So.2d 380, 385; Smith v. Louisiana Dept. of Corrections, 93-1305 (La. 2/28/94), 633 So.2d 129. Given the evidence offered at the hearing, we find no manifest error in the findings of fact by the hearing officer in the instant matter. There is ample evidence to show that Mr. Rivera did not respond truthfully to the questions on the pre-employment health form. There is also sufficient testimony to substantiate the hearing officer's finding that Mr. Rivera gave inconsistent and untrue information to various medical providers, as well as his employer, during the period he was employed with West Jefferson.
Also in question, is the truthfulness of Mr. Rivera's testimony concerning whether an accident actually occurred on October 22, 1993. As in other civil cases a claimant in a worker's compensation case has a burden of establishing a work-related accident by a preponderance of the evidence. Kampen v. Conway Southwest Exp. supra; Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992). Here, there is sufficient evidence presented by West Jefferson and Mr. Rivera's co-workers that he did not help to move the ice machine on October 22, 1993. It is obvious from the written reasons for judgment that the hearing officer gave more credence to that testimony than the testimony of Mr. Rivera. Considering the record, we cannot find manifest error in the hearing officer's ruling.
A copy of the pre-employment health screening health examination record signed by Mr. Rivera on February 19, 1993 is contained in the record. Mr. Rivera argues the form is not in accordance with R.S. 23:1208.1 in that it does not adequately inform the claimant of the possibility of forfeiture of benefits for misrepresentations contained therein. We are not convinced by this argument. The form is complete on one page and contains the following statement directly above Mr. Rivera's signature:
I have read the above and declare that I have had no injury, illness, or ailment other than as specifically herein noted. Any falsification, omission or misrepresentation will be sufficient grounds for my release from employment or it may result in the forfeiture of my worker's compensation benefits.
The print of the above warning is the same as that of the question part of the document and is in accordance with the provisions of the statute. Consequently, we find no merit in this argument.
Because the parties have stipulated to the occurrence of the accident on June 8, 1993, we find that Mr. Rivera is entitled to all medical benefits still due as a result of that accident. We find Dr. Malina's testimony sufficient to show that the treatment given to Mr. Rivera from June 8, 1993 to July 27, 1993 was related to the June 8, 1993 injury. Thus, we hold West Jefferson responsible for the payment of the charges billed by Dr. Malina for treatment from June 8, 1993 until July 27, 1993. However, because of the circumstances of this case, we do not find West Jefferson liable for any medical expense due for the October, 1993 claim. Further, we do not find West Jefferson to be arbitrary and capricious in their failure to pay the medical charges prior to this decision and uphold the hearing officer's ruling in that regard.
West Jefferson makes two requests which are beyond the subject matter jurisdiction of the hearing officer. West Jefferson asserts a claim for reimbursement of weekly benefits paid but not due, and for criminal and/or civil penalties in accordance with R.S. 23:1208 A and B. Thus, although we find Mr. Rivera's claim of injury in October, 1993 to be highly suspect, we are without jurisdiction to provide any remedy to West Jefferson regarding the reimbursement of benefits paid.
*611 Generally, district courts are vested with original jurisdiction over all civil matters by virtue of Article 5, Section 16 of the Louisiana Constitution. However, the Louisiana Legislature has made a provision for jurisdiction for administrative agency determinations in worker's compensation matters. LSA-R.S. 23:1310.3E vests the administrative hearing officer with, "original, exclusive jurisdiction over all claims or disputes arising out of the Worker's Compensation Chapter". Although West Jefferson's request for a money judgment representing the amount of weekly benefits paid, but not due, is an action related to worker's compensation, it is not an action arising out of the worker's compensation chapter. The worker's compensation act has no provision creating an action or providing relief to employers seeking reimbursement for worker's compensation benefits paid to employees who were not entitled to receive them. Cajun Bag And Supply v. Baptiste, 94-1218 (La.App. 3 Cir. 3/1/95), 651 So.2d 943 at 948.
West Jefferson also asserts the trial court erred in not assessing criminal penalties against Mr. Rivera pursuant to R.S. 23:1208 C(2) which provides:
Whoever violates any provision of this Section, when the benefits claimed or payments obtained have a value of two thousand five hundred dollars or more, but less than a value of ten thousand dollars shall be imprisoned, with or without hard labor, for not more than five years, or fined not more that five thousand dollars, or both.
Under the Louisiana Constitution, the district court is vested with original jurisdiction over criminal prosecutions. La. Const.1974 Art. 5 Sec. 16. In exercising its criminal jurisdiction, the district court is bound by the provisions of the Louisiana Code of Criminal Procedure. C.Cr.P. art. 15. There is a fundamental difference between criminal and civil matters. See Bd. of Commissioners of Orleans Levee v. Connick, 94-3161 (La. 3/9/95), 654 So.2d 1073. Criminal prosecutions put the defendant at risk of losing basic personal freedoms which are protected by both the United States and the Louisiana Constitutions. As such, criminal prosecutions must be conducted within the strict confines of the criminal justice system. There is no provision in the Worker's Compensation Chapter which authorizes a hearing officer to convict a claimant of criminal activity and sentence him accordingly.
While civil penalties may be imposed in the form of a fine, those penalties are discretional with the director. The hearing officer's authority for imposing a penalty under R.S. 23:1208 is restricted to section E which states, "Any employee violating this Section will, upon determination by hearing officer, forfeit any right to compensation benefits under this Chapter". Thus, we find no merit in West Jefferson's arguments on these two issues.
West Jefferson also argues the hearing officer erred in failing to assess costs of the proceedings to Mr. Rivera in accordance with LSA R.S. 23:1310.9 which reads as follows:
If the hearing officer before which any proceedings for compensation or concerning an award of compensation have been brought, under the Worker's Compensation Act, determines that such proceedings have not been brought on a reasonable ground, or that denial of benefits has not been based on a reasonable ground, the hearing officer shall assess the total cost of the proceedings to the party who has brought them or the party who has unreasonably denied payment of benefits.
Because both parties in the instant matter have brought claims based on reasonable grounds, we do not find this statute applicable. This assignment is without merit.
West Jefferson's final argument is that the hearing officer erred in refusing to admit an uncertified medical report into evidence. At the hearing counsel for West Jefferson attempted to question Mr. Rivera concerning a visit to Dr. Gordon Nutik. Mr. Rivera's counsel objected to the questioning based on the fact that West Jefferson listed Dr. Nutik's deposition on the pre-trial statement. However, West Jefferson did not depose Dr. Nutik and attempted to introduce a five page written report by Dr. Nutik, in lieu of the deposition. West Jefferson's counsel explained that the report suited their purposes. Consequently, Dr. Nutik was not deposed. The hearing officer initially ruled the *612 report admissible since the report was forwarded to opposing counsel and no objection was made timely. However, since West Jefferson did not have a certified copy of the report to introduce into the record, the hearing officer refused to admit the report.
The Louisiana Code of Evidence article 510B(2)(a) provides an exception to the general rule that a health care provider-patient privilege exits in favor of the patient. That article provides that no privileges exists, "When the communication relates to the health condition of a patient who brings or asserts a personal injury claim in a judicial or worker's compensation proceeding". Statements made for the purpose of medical diagnosis is an exception to the hearsay rule. LSA-C.E. art. 803(4). However, to be admitted, a medical report must be authenticated. LSA-C.E. art. 901. See also, LSA-R.S. 13:3715.1.
The hearing officer in the instant case ruled that to admit the uncertified report without affording Mr. Rivera the opportunity to cross-examine the doctor either in deposition or in live testimony at the hearing would be improper. Under the circumstances of this case, we find no error in that ruling.
For the foregoing reasons, we affirm the ruling of the hearing officer.
AFFIRMED.
NOTES
[1] It appears from the record that Dr. Batherson is the head of the Spine Care Plus, Inc., the clinic in which Mr. Rivera received treatment from Dr. Spine Jerry Malina.
[2] These sections determine the effect of a false statement or misrepresentation on a worker's compensation claim. Thus, it is the statute in effect at the time of the false statement, not the injury which is applicable. See, Resweber v. Haroil Const. Co., 94-2708 (La. 9/5/95), 660 So.2d 7.