12DALEY, Judge.
Claimant, Lance N. Gauthreaux, appeals the judgment of the Office of Workers’ Compensation rendered December 29, 1997, upholding the termination of his benefits for temporary total disability. On appeal, Gau-threaux argues that the trial court erred in equating his volunteer activities at the shelter where he lives with the ability to engage in employment. For the reason that follow, we find no error in the trial court’s findings of fact and judgment, and we affirm.
Gauthreaux was employed by Louisiana Discount Meat Market on August 4, 1995 as a butcher when he sustained an unwitnessed accident and injury in the course and scope of his employment. He allegedly sustained an injury to his lower back and right leg. He was paid medical benefits and weekly temporary total disability benefits until October 16, 1996. These benefits were terminated based on the opinions of three physicians that claimant and his diagnostic tests exhibited no signs of injury or disability and he was capable of working.
|3On appeal, Gauthreaux argues that he is still in too much pain to return to work. He argues that his volunteer activities at the homeless mission do not equate to employment, and thus his employer erred in terminating his weekly benefits.
Gauthreáux’s medical history shows that prior to this back injury, he injured his left wrist in a workers’ compensation accident and received temporary total disability benefits for approximately one year. In June of 1995, approximately two months prior to this injury, he received a sympathetic nerve block at Doctor’s Hospital for his wrist. He also received over this time period Vicodin for the wrist pain. He had only recently returned to work, on July 27, 1995, when he injured his back on August 4,1995.
Gauthreaux was treated by Dr. Bernard Manale, an orthopedist, for the wrist injury and also for the back injury. The medical records show that Dr. Manale treated claimant through approximately early January, 1996. During that time, it appears that Gau-threaux attended some physical therapy for his back, and was treated with Vicodin and Valium for pain management. It appears that Dr. Manale terminated his care of this patient over a disagreement regarding claimant’s use of narcotic pain medicine.
Plaintiffs treating neurologist, Dr. John Olsen, testified that Gauthreaux appeared to have bilateral L-5 radiculopathy, because he appeared to have loss of sensation upon pin prick in his feet corresponding to this nerve root. Dr. Olsen admitted the pin prick test is subjective and that the physician has no real way of knowing if the patient is responding truthfully, but he assumed that he is. He first saw claimant in February of 1996, after claimant concluded treatment with Dr. Ma-nale. Based upon Gauthreaux’s history and this physical exam, Dr. Olsen felt that he might have a herniated disc at L4-5, and ordered an MRI and EMG tests. The MRI psuggested early degenerative changes in *1221 the L5-S1 area, but was otherwise interpreted to be normal. X-rays showed no bony abnormalities and were interpreted to be normal. An EMG was conducted, which showed some rare sharp waves at the right L5-S1 paraspinal muscles.
Dr. Mark Juneau, an orthopedist, examined Gauthreaux at the request of the defendant on November 20, 1995, to evaluate his lower back. He found no muscle spasms, and inconsistent results in diagnostic tests. He further opined that the numbness described by Gauthreaux in his right leg was anatomically impossible. He reviewed x-rays, the MRI, and the EMG. He found no objective orthopedic reason for the claimant’s complaints of pain, and found no reason why Gauthreaux should not be able to return to work as of December 18, 1995, the date of the MRI.
Dr. Susan Boston, a neurologist, examined Gauthreaux on April 22, 1996. Gauthreaux testified that she performed a thorough examination. She noted a disparity in the patient’s performance of straight leg raising, the exercise causing pain when lying down but not when sitting up. She reviewed the records of Dr. Manale and Dr. Olsen, as well as the MRI notes of Dr. Juneau and the EMG scan. From a clinical point of view, she found no evidence of neurological involvement with a herniated disc or radiculo-pathy, and no neurological disease. From his history, Dr. Boston felt that the claimant sustained a low back strain that should have resolved. From a neurological point of view, she found no reason why Gauthreaux should not be able to return to work immediately.
Dr. Walter Truax, a neurologist, performed an independent medical examination of Gauthreaux on September 23, 1996. He reviewed the medical records, including Dr. Olsen’s office notes, the IME by Dr. Susan Boston, the notes of Dr. Juneau and Dr. Manale. He reviewed the EMG report of October 4, 1995, and 1 gthe actual MRI films performed on October 17, 1995. Dr. Truax’s medical examination found no spasm,, inconsistent results on the straight leg raises, and non-anatomie tubular subjective loss of sensation on the right leg. He opined that the MRI scan was normal. Dr. Truax found no evidence of neurological injury, disease, or diagnosis. He found the EMG results in the paraspinal muscles not unusual and of little clinical significance, especially considering the patient’s normal MRI scan. He felt that Gauthreaux could return to work on an unrestricted basis.
Pastor Charles Johnson testified that the claimant is a resident of the rescue mission in Gretna. Gauthreaux is on the house council, and handles oversight of the facility, administration of the rules, and is responsible for basic oversight of the mission when Johnson is not there. Gauthreaux is not paid for his work, but is required to perform these duties in exchange for room and board, as are all the residents. These duties appear to be in the nature of counseling, ministry, and supervision of other residents at their tasks, rather than manual labor. Johnson testified that he has seen the claimant in pain and some days when he could not rise from bed from pain in his back. He testified that most of the time he saw the claimant walk normally, but he would experience difficulty with back pain after attempting some manual labor.
Dr. John' Olsen opined that Gauthreaux was still disabled from working. However, at trial, this doctor learned for the first time that Gauthreaux was working at the homeless mission where he lived in return for room and board. Dr. Olsen then stated that he believed Gauthreaux could engage in sedentary work.
The trial judge found that claimant demonstrated the ability to engage in employment, and upheld the termination of benefits on that basis. She specifically 16stated that evidence suggesting claimant was addicted to narcotic pain medication did not figure in her determination.
In a worker’s compensation case, as in other eases, we are bound by the manifest error rule and we may not set aside the factual findings of the hearing officer absent a finding by this court that they are clearly wrong or manifestly erroneous. Rivera v. West Jefferson Medical Center, 96-152 (La. App. 5 Cir. 7/30/96), 678 So.2d 602.
After a thorough review of the record, we find no manifest error in the judgment of the *1222 trial court that found Gauthreaux capable of returning to employment. Accordingly, we affirm the judgment of the trial court.
AFFIRMED.